IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Sherrie L. Brown          :

    Plaintiff            :   Case No. 3:15-CV-1758

    V.                   :   (Judge Richard P. Conaboy)

Carolyn W. Colvin         :
Acting Commissioner of
Social Security           :

    Defendant `          :

_____

**Memorandum**

We consider here Plaintiff Sherrie L. Brown's appeal from an
adverse ruling of the Social Security Administration ("SSA") dated
July 9, 2015.  The SSA's ruling of July 9, 2015 upheld the prior
decision of one of its administrative law judges to deny
Plaintiff's application for Supplemental Security Income Benefits
("SSI").  The parties have fully briefed (Docs. 15, 16, and 17)
their positions and this matter is now ripe for disposition.

**I.   Procedural Background.**

Plaintiff filed her SSI application on August 23, 2012.  She
alleges an onset date of October 1, 2008.  Her claim was initially
denied at the administrative level in December of 2012 whereupon
she filed a written request for a hearing before an ALJ.  She was
afforded that hearing on January 29, 2014.  On February 27, 2014
the ALJ issued a written decision denying Plaintiff's SSI

1

application.  The ALJ's decision was ratified by the Appeals Council on July 9, 2015 and thus became a final decision of the SSA.  Plaintiff filed her complaint in timely fashion with this Court on September 9, 2015.  She contends that the SSA's Findings of Fact and Conclusions of Law are unsupported by substantial evidence and contrary to law.  (Doc. 1, ¶ 8).  Plaintiff requests that this Court remand this case for further proceedings and award attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.

**II.   Factual Background.**

    **A.   Testimony Before the ALJ.**

Plaintiff Brown's testimony may be summarized as follows. At the time of her hearing (January 29, 2014) she had been out of work since 2008.  (R.50).  Her last employment had been as a seamstress who sewed labels on men's shirts.  (Id.).  Plaintiff was 40 years of age at the time of her hearing and she had completed the eleventh grade.  (R.51).  She resides in Mount Carmel, Pennsylvania with her fiancee and three children and, on the date of the hearing, their household had no income.  (R.51-52).

Plaintiff Brown testified that she has difficulty breathing, that she is unable to sit for long periods because of joint pain and inflammation, and that she has extreme anxiety attacks.  She stated that she feels fatigued all the time, has difficulty remembering to do basic tasks such as brushing her teeth and taking

2

her medications, and that she does not want to get out of bed in the morning.  She has difficulty climbing a flight of stairs because of her breathing impairment and she stated that she does not get restful sleep even though she uses a C-Pap machine to alleviate sleep apnea.  (R.52).

Ms. Brown described a long series of abdominal problems that began after the birth of her second child in 2004.  After that delivery by C-section, she had a series of five separate hernia operations followed by a hysterectomy.  Incident to one of these surgeries, a mesh had been introduced into her abdomen.  This mesh has become intertwined with a section of her bowel.  Incident to two of her surgeries, she developed major infections that required further hospitalizations.  The net effect of these surgeries is that she finds it difficult to sit or stand comfortably.  She can only sit for approximately half an hour and then must reposition herself.  She can stand for approximately one half hour before she must sit or recline due to swelling of her ankles and knees. (R.53-54).

Plaintiff estimated that she could walk 3-4 blocks on a flat surface at a slow pace.  Walking further than that would be difficult due to her breathing impairment and joint pain.  Walking uphill would cause her to use her rescue inhaler.  She stated that she has been told that she has COPD and that she gets bronchitis several times a year.  Extremely cold or hot weather exacerbates

3

her breathing problems.  She uses Albuterol via a nebulizer to ease her breathing difficulties and sleeps with a C-Pap machine due to her sleep apnea.  (R.54).  The C-Pap machine initially helped her a great deal but she did not feel she was getting a restful night's sleep at the time of the hearing.  She opined that the C-Pap machine required adjustment to a different pressure which, to her understanding, would require her to undergo another sleep study. (R.55).

Plaintiff described her unsuccessful efforts to quit smoking. Before the onset of her various physical ailments, she was a two-to-three pack a day smoker.  She stated that she has cut back to a pack and a half per day consumption of cigarettes but, because of her anxiety, she cannot seem to cut her tobacco consumption any further.  She stated that she sees a therapist once a week to try to alleviate her stress and anxiety.  Her primary doctor has prescribed an anti-depressant and Valium for her anxiety.  Her anxiety makes it difficult to be around people.  (R.56).

Plaintiff takes numerous medications but has had to make a chart to help her remember to take these medications at the appropriate time.  She is able to do light work around the house. She still does the dishes, but needs help to do the laundry.  She can dress herself and is able to shower without assistance.  At times she needs help from her fiancee and in-laws to take care of the children.  (R.57).

Plaintiff watches television but is not able to watch a show from beginning to end very frequently because she gets distracted and needs to move around.  She has difficulty recalling what she watches.  She states that she just cannot do things she formerly did.  She had been a good cook but is now reduced to preparing convenient meals that can be easily prepared.  She was an avid gardener and liked to crochet but is now incapable of doing those things.  She does grocery shopping when her father-in-law is available to transport her.  She typically does her grocery shopping once every two to three weeks.  She must rely on her father-in-law because she does not drive.  (R.58-60).

Plaintiff testified further that she was 4'11" and weighed 207 pounds at the time of her hearing.  She stated that she had lost 50 pounds in the previous year and is trying to eat more healthily.  She lost weight under her doctor's direction because of her hernias, a thyroid condition, high blood pressure, and type II diabetes.  Losing the weight has helped her control her blood sugar levels but it is still not entirely under control.  When her blood sugar spikes it causes her vision to deteriorate and she begins to shake and sweat.  (R.61-62).

Plaintiff, her fiancee, and her three children subsist on public assistance and $100.00 that her father-in-law gives them each month.  She uses the $100.00 to buy cigarettes for herself and her husband.  They roll their own cigarettes because they cannot

afford pre-packaged ones.  Her in-laws also sporadically provide financial assistance to help with such things as purchasing school clothing for her children.  Her husband is trying to get disability benefits due to a heart condition and her concern about his medical issues exacerbates her own anxiety.  While she has seen a counselor for her mental health issues, she has never been admitted to a facility for her depression and anxiety.  (R.63).

Nadine Henzes, a Vocational Expert, also testified at Plaintiff's hearing.  Ms. Henzes stated that she had reviewed Plaintiff's work history and that it revealed Plaintiff worked as a sewer, an appointment setter, a laundry worker, and a returns clerk.  These jobs ranged from light, unskilled work to sedentary semi-skilled work.  The ALJ posed a hypothetical question to Vocational Expert asking her to assume: a person of Plaintiff's age, education and work experience who could perform light work, could occasionally climb ramps and stairs but never climb ladders, could occasionally balance, stoop, kneel, crouch, or crawl, who must avoid extreme heat and cold, fumes and dust, and who must avoid such hazards as extreme heights and moving machinery, who can understand and carry out simple instructions in an environment free of fast-paced production quotas, and who can have only occasional interaction with supervisors, co-workers, and the general public. Asked whether such a person could perform her past relevant work, the Vocational Expert responded that the sewer position and the

laundry position could be performed by such a person.

When the ALJ added an additional restriction that the person could perform only sedentary work, the VE responded that such a person could perform as a visual inspector, a document preparer, and a video monitor, all positions that exist in significant numbers in the national ecoonomy.

The ALJ then added to the hypothetical question additional restrictions limiting the claimant to lifting no more than 15 pounds, standing and walking no more than two hours in an 8-hour day, permitting the claimant unscheduled breaks every 30 minutes, and allowing the claimant four absences per month. The Vocational Expert then testified that these additional restrictions would render the claimant unemployable.  (R.63-66).

**B.   Medical Evidence.**

`1.  Dr. Raymond Kraynak.**

Dr. Kraynak was the Plaintiff's primary care doctor from 2004 through 2013. (R.433).  For some indeterminate period of time, Dr. Kraynak saw Plaintiff on a monthly basis.  (R.337).  Dr. Kraynak provided his opinion of Plaintiff's work capacity on several occasions.  On June 21, 2012, he completed a Mental Impairment Questionnaire in which he opined that she had marked impairments in: her ability to understand short and simple instructions; her ability to remember locations and work procedures; her ability to understand detailed instructions; her ability to carry out either

7

short or detailed instructions; her ability to maintain
concentration and pace; her ability to conform to a schedule and
maintain regular attendance; her ability to sustain an ordinary
routine without special supervision; her ability to work in close
proximity to others without being distracted by them; her ability
to complete a normal work week without interruption from
psychologically based symptoms; her ability to perform at a
consistent pace with a standard number and length of rest periods;
the ability to travel in unfamiliar locations and use public
transportation; and the ability to respond appropriately to changes
in the work environment.  Dr. Kraynak also indicated that the
Plaintiff would miss more than four days of work each month - -an
"extreme" limitation.  (R.249-252).

On November 5, 2012, Dr. Kraynak wrote a letter to the
Pennsylvania Bureau of Disability Determination stating that the
claimant "has been under my care for treatment of type II diabetes,
morbid obesity, arthritis, anxiety, COPD, and chronic fatigue. She
also has a long history of irritable bowel syndrome.  She uses
Tylenol 3, Q4H for pain; and Buspar 10 mg./TID for anxiety.  She
uses Glucophage, 500 mg/BID for her diabetes.  As a result of this,
she is totally disabled from any and all employment."  (Doc. 12-
10).

On October 14, 2012, Dr. Kraynak completed a Residual
Functional Capacity Questionnaire concerning Plaintiff's physical

8

abilities.  He diagnosed Plaintiff with COPD, arthritis, sleep apnea, obesity and diabetes and assigned her a prognosis of "fair". He stated that Plaintiff's symptoms associated with her identified impairments would constantly interfere with her ability to perform simple work-related tasks.  Dr. Kraynak further opined that Plaintiff: could walk one half to one block without rest; sit for 4 hours during an 8-hour workday but never more than 20 minutes at a time; would need to take unscheduled breaks of from five to ten minutes duration every hour during an 8-hour workday; could occasionally lift less than ten pounds but never lift ten pounds or more; could use her hands, fingers and arms for no more than 20% of an 8-hour workday to reach, grasp, or twist objects, or perform fine manipulations.  He stated that Plaintiff was not a malinginer and was physically incapable of working an 8-hour day, five days a week on a sustained basis.  (R.337-38).

On June 13, 2013, Dr. Kraynak completed a second Residual Functional Capacity Assessment of Plaintiff along with a second Mental Capacity Questionnaire regarding her.  The Residual Functional Capacity Assessment mirrored closely the one Dr. Kraynak had completed on October 14, 2012.  However, Dr. Kraynak's Residual Functional Capacity Evaluation of June 13, 2013 indicated that Plaintiff's ability to sit had declined to 15 minutes at one time and no more than three hours in an 8-hour workday.  Also, Dr. Kraynak estimated that Plaintiff's tolerance for the use of her

hands, arms and fingers had decreased to only 10% of an 8-hour workday.  (R.433-35).

The Mental Capacity Questionnaire that Dr. Kraynak completed on June 13, 2013 indicated that many of the marked limitations he had found in his assessments of June 21, 2012 had resolved to the point that they were now moderate limitations.  Only Plaintiff's ability to complete a normal work week without interruptions from psychologically-based symptoms continued to be a marked limitation as of June 13, 2013 according to Dr. Kraynak's later report. (R.436-37).

### 2.   Dr. Sanjay Sen.

Dr. Sen saw the Plaintiff on October 4, 2012 at the request of the Bureau of Disability Determination.  Dr. Sen conducted a physical examination of Plaintiff and took a history of her family background, medication, and reported symptoms.  His impressions of the Plaintiff included COPD, nicotine dependance, sleep apnea, joint pain and a right abdominal hernia.  Dr. Sen did not opine that Plaintiff had any cognitive, emotional, or psychological impairment.  He found that Plaintiff could lift or carry up to 15 pounds, stand and walk for one to two hours, sit for two hours, push and pull with 10 to 15 pounds of force with her hands and 20 pounds of force with her feet, frequently balance and climb steps, and occasionally bend, kneel, stoop and crouch.  Dr. Sen also found that Plaintiff should avoid cold temperatures, fumes, odors, gases,

dust, and humidity because these things could exacerbate her shortness of breath.  He scheduled her for a pulmonary function test that ultimately revealed that Plaintiff suffered minimal obstructive lung deficit and a mild decrease in oxygen diffusing capacity.  He also recommended an imaging study of her joints, but the record includes no report of such a study.  (R.347-352).

   **3.   Dr. Matthew Emery.**

   On December 4, 2012, Plaintiff was evaluated by Dr. Emery, a licensed psychologist, at the request of the Bureau of Disability Determination.  Dr. Emery's report (R.371-375) indicates that Plaintiff followed directions and was generally cooperative during the examination.  Dr. Emery concluded that Plaintiff suffered from "Major Depressive Disorder, Mild", and "Anxiety Disorder, NOS" and assigned her a GAF (Global Assessment of Function) score of 60, a score indicative of "moderate symptoms such as flat affect, occasional panic attacks, or moderate difficult of social, occupational, or school functioning."  See Diagnostic and Statistical Manual of Mental Disorders at 34 (4th Ed. Text Rev. 2000).

   Dr. Emery also completed a "Medical Source Statement of Ability to Do Work-Related Activities (Mental).  (R.376-378).  He found: that Plaintiff's ability to understand and carry out simple instructions was slightly impaired; that her ability to carry out detailed instructions was only moderately impaired; and that her

11

ability to make judgments on simple work-related decisions was not impaired.  Dr. Emery also found that Plaintiff was not impaired with respect to her ability to interact with the public, supervisors or co-workers and that she was moderately impaired in her ability to respond appropriately to work pressures and changes in a routine work setting.  Dr. Emery deferred comment on Plaintiff's physical limitations leaving that to her medical doctors.  Finally, Dr. Emery concluded that Plaintiff could manage benefits in her own interest.

    **4.   Judith Kriskie, LCSW.**

Plaintiff attended counseling sessions with Ms. Kriskie, a licensed clinical social worker, on nine occasional between April 26, 2013 and July 31, 2013.  (R.439).  On the basis of these encounters, Ms. Kriskie completed a "Mental Capacity Assessment" (R.582-84). regarding Plaintiff on January 4, 2014.  Ms. Kriskie found that Plaintiff suffered from anxiety, panic attacks, and poor memory.  Ms. Kriskie stated that "Sherrie is unable to remember to take her meds every day - - is overwhelmed by daily stressors and has decompensated over the past six months." (R.582).  Ms. Kriskie found that Plaintiff had "extreme" limitations in numerous aspects of her ability to remember, understand, sustain concentration, maintain socially appropriate behavior, and adapt to changes in a work setting.  Finally, Ms. Kriskie found that Plaintiff retained the ability to manage benefits in her own interests.

## C.    ALJ's Decision.

The ALJ's decision (Doc. 12-2) was unfavorable to the Plaintiff.  It included the following Findings of Fact and Conclusions of Law:

1.    The claimant has not engaged in substantial gainful activity since August 3, 2012, the application date.

2.    The claimant has the following severe impairments: history of abdominal hernias, chronic obstructive pulmonary disease, morbid obesity, diabetes mellitus, obstructive sleep apnea, history of irritable bowel syndrome, major depressive disorder and anxiety.

3.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.    After careful consideration of the entire record, the undersigned finds that the claimant has the Residual Functional Capacity to perform sedentary work as defined in 20 CFR 416.96(a) except that she could only occasionally climb ramps and stairs but never ladders, ropes or scaffolds.  The claimant

13

could occasionally balance, stoop, kneel, crouch and
crawl.  She must avoid concentrated exposure to
extreme cold, extreme heat, wetness, humidity,
vibration, fumes, odors, dust, gases, poor
ventilation and hazards such as heights and moving
machinery.  The Plaintiff could understand, remember
and carry out simple instructions in an environment
free of fast-paced production requirements involving
only simple work-related decisions with few work
place changes.  The claimant could have only
occasional interaction with supervisors, co-workers
and the public.

5.   The claimant is unable to perform any past relevant
     work.  (20 CFR 426.965).

6.   The claimant was born on May 6, 1973 and was 39
     years old, which is defined as a younger individual
     age 18-44 on the date the application was filed.

7.   The claimant has a limited education and is able to
     communicate in English.

8.   Transferability of job skills is not material to the
     determination of disability because using the
     Medical-Vocational Rules as a framework supports a
     finding that the claimant is "not disabled", whether
     or not the claimant has transferrable job skills.

14

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.  (20 CFR 416.969 and 416.969(a).

10. The claimant has not been under a disability as defined in the Social Security Act, since August 3, 2012, the date the application was filed (20 CFR 416.920(g)).

## III. Disability Determination Process.

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled.[1]  It is necessary for the Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the

---

[1] "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less that 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).  The Act further provides that an individual is disabled

only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work.  20 CFR §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

The disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work.  If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform.  *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at the fifth step of the process when the ALJ found there are jobs that exist in the national economy that Plaintiff is able to perform. (R.39-40).

**IV. Standard of Review**

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision.  42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence means "more than a mere scintilla.  It means such relevant evidence

16

as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). The Third Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a
> talismanic or self-executing formula for
> adjudication; rather, our decisions make
> clear that determination of the existence *vel
> non* of substantial evidence is *not* merely a
> quantitative exercise.  A single piece of
> evidence will not satisfy the substantiality
> test if the Secretary ignores, or fails to
> resolve, a conflict created by countervailing
> evidence.  Nor is evidence substantial if it
> is overwhelmed by other evidence--
> particularly certain types of evidence (e.g.,
> that offered by treating physicians)--or if
> it really constitutes not evidence but mere
> conclusion.  *See Cotter*, 642 F.2d at 706
> ("Substantial evidence" can only be
> considered as supporting evidence in
> relationship to all the other evidence in the
> record.") (footnote omitted).  The search for

> substantial evidence is thus a qualitative
> exercise without which our review of social
> security disability cases ceases to be merely
> deferential and becomes instead a sham.

710 F.2d at 114.

This guidance makes clear that it is necessary for the Secretary to analyze all evidence.  If she has not done so and has not sufficiently explained the weight given to all probative exhibits, "to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979).  In *Cotter*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07.  However, the ALJ need not undertake an exhaustive discussion of all the evidence.  *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  "There is no requirement that the ALJ discuss in its opinion every tidbit of evidence

included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). "[W]here [a reviewing court] can determine that there is substantial evidence supporting the Commissioner's decision, . . . the *Cotter* doctrine is not implicated." *Hernandez v. Commissioner of Social Security*, 89 Fed. Appx. 771, 774 (3d Cir. 2004) (not precedential).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .")). "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary, in making his findings, applied the correct legal standards to the facts presented." Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted). Where the ALJ's decision is explained in sufficient detail to allow meaningful judicial review and the decision is supported by substantial evidence, a claimed error may be deemed harmless. See, e.g., Albury v. Commissioner of Social Security, 116 F. App'x 328, 330 (3d Cir. 2004) (not precedential) (citing Burnett v. Commissioner, 220 F.3d 112 (3d Cir. 2000) ("[O]ur primary concern has always been the

19

ability to conduct meaningful judicial review."). An ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision. Matthews v. Apfel, 239 F.3d 589, 593 (3d Cir. 2001).

**V.   Discussion.**

**A. General Considerations**

At the outset of our review of whether the ALJ has met the substantial evidence standard regarding the matters at issue here, we note the Third Circuit has repeatedly emphasized the special nature of proceedings for disability benefits. See Dobrowolsky, 606 F.2d at 406. Social Security proceedings are not strictly adversarial, but rather the Social Security Administration provides an applicant with assistance to prove his claim. Id. "These proceedings are extremely important to the claimants, who are in real need in most instances and who claim not charity but that which is rightfully due as provided for in Chapter 7, Subchapter II, of the Social Security Act." Hess v. Secretary of Health, Education and Welfare, 497 F. 2d 837, 840 (3d Cir. 1974). As such, the agency must take extra care in developing an administrative record and in explicitly weighing all evidence. Dobrowolsky, 606 F.2d at 406. Further, the court in Dobrowolsky noted "the cases demonstrate that, consistent with the legislative purpose, courts have mandated that leniency be shown in establishing the claimant's disability, and that the Secretary's responsibility to rebut it be

strictly construed."  Id.

## VI.  Plaintiff's Allegations of Error.

> 1.   Whether the ALJ's Residual Functional Capacity
>      Determination is Unsupported by Substantial Evidence
>      Because the ALJ Erred by According Inadequate Weight to
>      the Testimony of Plaintiff's Treating Physician?

Plaintiff contends that because Dr. Raymond Kraynak, her treating physician, provided multiple medical source statements indicating that she was completely disabled, his opinion should be entitled to controlling weight.  Certainly, the testimony of the treating physician with a lengthy longitudinal history of treating the claimant is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record...".  Fargnoli v. Massanari Acting Commissioner, 247 F.3d 34, 43, (3d. Cir. 2001). While Dr. Kraynak is undeniably Plaintiff's treating physician, his opinion, as expressed in multiple medical source statements, is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and, thus, cannot be given controlling weight under the principle expressed in Fargnoli, supra.  The administrative record contains remarkably little in the way of diagnostic testing results obtained by Dr. Kraynak.  In fact, there are none. Beyond that, considering the nine year doctor/patient

relationship between Plaintiff and Dr. Kraynak, the additional documentation provided by Dr. Kraynak is remarkably sparse. The only other documentary evidence generated by Dr. Kraynak in the record is two pages of anecdotal hand-written notes summarizing six office visits by Plaintiff between January 3, 2012 and April 23, 2013. (R.586-87). These notes are largely illegible and cannot be interpreted as "well-supported" evidence of Plaintiff's ailments and the extent to which they incapacitate her. Thus, all we have from the treating physician are a series of "fill in the blank" forms that, in the Third Circuit, are considered to be weak and unreliable evidence. Mason v. Shalala, 994 F.2d 1058, 1065 (3d. Cir. 1983)(citing Brewster v. Heckler, 786 F.2d 581, 585 (3d. Circ. 1986). For this reason, we cannot fault the ALJ for assigning Dr. Kraynak's opinion "limited weight". (R.38). The ALJ's conclusion that Dr. Kraynak's opinion was unsupported by examination findings or the objective medical evidence (R.38) is supported by this record. Accordingly, the Court does not agree that the ALJ improperly discounted Dr. Kraynak's opinion nor can the Court conclude that the ALJ's RFC determination is unsupported by substantial evidence.

**2.   Whether the ALJ's Credibility Determination is Unsupported by Substantial Evidence?**

The ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged

symptoms.  However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible...".  (R.36).  The Plaintiff's testimony as to the limitations caused by her COPD are contradicted in the record by a pulmonary function study that "confirmed only minimal obstructive lung deficit and mild decrease in diffusing capacity." (R.38).  The ALJ also noted that, in spite of the claimant's allegations of being short of breath, "she continues to smoke, which suggests that her breathing issues are not so limiting as to be disabling."  (Id.).  Claimant's persistence in smoking despite her COPD is certainly probative that her symptoms may not be as severe as she contends and the ALJ's finding to this effect is reasonable.

Similarly, Plaintiff's complaints regarding her inability to focus, concentrate, and remember (R.57-60) are contradicted in the record.  Dr. Emery, the examining psychologist, found that claimant's thought process appears to be logical, coherent, and goal-oriented.  Her rate of mentation seemed to be within normal limits."  (R.373).  Dr. Emery also found that both claimant's recent memory and remote memory appear to be intact.  Thus, there is probative evidence of record that the claimant's credibility regarding her inability to remember and concentrate is, to some degree, overstated.

For these reasons, we determine that the ALJ's finding that

Plaintiff was not entirely credible in describing her physical and mental impairments is supported by substantial evidence of record.

    **3.    Whether the ALJ's Step V Determination is Unsupported by Substantial Evidence?**

The ALJ concluded at Step V of the SSA evaluative process, that the claimant has the residual functional capacity to perform jobs that exist in significant numbers in the national economy. (R.39-40). The ALJ had previously found as a fact that the claimant could perform sedentary work with various physical restrictions and "...could understand, remember and carry out simple instructions in an environment free of fast-paced production requirements involving only simple work-related decisions with few work place changes. The claimant could have only occasional interaction with supervisors, co-workers and the public." (R.35).

After being asked to assume the accuracy of the limitations imposed by the ALJ's RFC determination, the Vocational Expert testified that Plaintiff could not do her past relevant work but could perform such jobs as visual inspector, document preparer, and video monitor. (R.66). After further questioning of the Vocational Expert, she was asked whether her testimony was consistent with the Dictionary of Occupational Titles (DOT) and she responded that it was consistent in respect to the three occupations previously mentioned. (R.67). Plaintiff's counsel was then asked whether he had any questions for the Vocational Expert whereupon he declined

to ask any.  (Id.).

As the Government points out (Doc. 16, 24-25 at n.5) in its brief, the SSA may take administrative notice of "reliable job information" found in the DOT.  The SSA issued Social Security Ruling 00-4P to provide guidance to resolve any discrepancies between opinions offered by vocational experts and the literal wording of DOT descriptions of various occupations.  The SSA recognized that a "Vocational Expert...may be able to provide more specific information about jobs or occupations than the DOT."  See SSR 00-4P at 3.  SSR 00-4P also states that if there is "an unresolved conflict between Vocational Expert...evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE...to support a determination or decision about whether the claimant is disabled."  This begs the question whether there is, in fact, an "unresolved conflict" between the VE's testimony in this case and the descriptions of the relevant jobs in the DOT.

Plaintiff asserts that the three positions that the VE identified as being within Plaintiff's physical and mental capacities actually require a higher level of cognitive ability than the ALJ's hypothetical questions asked the VE to assume. Specifically, Plaintiff claims that all three positions require frequent interaction with supervisors, co-workers and the public and the ability to carry out both simple and detailed instructions.

This would conflict with some of the limitations that the VE was asked to assume - - that the jobs require only <u>occasional</u> interaction with supervisors, co-workers and the public and require only the ability to carry out <u>simple</u> instructions.  (Doc. 15 at 14-15).

The Court must make two observations here.  First, the Plaintiff's counsel declined to identify, much less explore, any "unresolved conflict" between the VE's testimony and the DOT at the hearing in this matter.  Second, Plaintiff's assertion that a conflict exists here is bereft of any specific citation establishing the existence of the alleged conflict.

The Court will rely on precedent establishing that, where the ALJ's hypothetical question incorporates all credible limitations established by the record,[2] the ALJ may appropriately consider the VE's response to that question as substantial, reliable evidence. Plummer v. Apfel, 186 F.3d 422, 431 (3d. Cir. 1999).  In placing this reliance on the VE's expertise, the Third Circuit implicitly recognized that vocational experts have great knowledge of the difference between the way various jobs are described in the DOT and the way these jobs are actually performed in the workplace. Thus, even if there is a discrepancy between the DOT descriptions of the jobs in question and the way these jobs are actually

---

[2] The Court agrees that the hypothetical question from which the Vocational Expert testified incorporated all of Plaintiff's mental and physical limitations that are established by the record in this case.

performed - - something that Plaintiff has not documented to the Court's satisfaction - - the ALJ's reliance on the VE's testimony was appropriate.

**VII. Conclusion.**

For all the foregoing reasons, the Court rejects all three of the Plaintiff's assignments of error.  Accordingly, the Commissioner's decision in this matter will be upheld.  An Order consistent with this determination will be filed contemporaneously.

BY THE COURT

S/Richard P. Conaboy
Honorable Richard P. Conaboy
United States District Court

Dated: April 14, 2016